**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

```
MALIBU MEDIA, LLC,              )
                                )
     Plaintiff,                 )
                                )  Civil Action No.
v.                              )  1:14-cv-20393-CMA
                                )
JOHN DOE subscriber assigned    )
IP address 66.176.59.75,        )
                                )
     Defendant.                 )
_____ )
```

**JOHN DOE'S OMNIBUS MOTION TO DISMISS ACTION WITH**
**MOTION TO QUASH NON-PARTY SUBPOENAS OR ENTER PROTECTIVE ORDER,**
**WITH INCORPORATED MEMORANDUM OF LAW**

COMES NOW Defendant "John Doe,"[1] identified by Plaintiff only as the accountholder for Internet service having IP Address **66.176.59.75**, in a special, limited appearance by and through the undersigned attorney, and moves this Honorable Court, pursuant to Rules 12(b), 26(b) and (c), and/or 45(d)(3), to **DISMISS** the action and **QUASH** the subpoena seeking John Doe's private information, or issue a protective order protecting same.

**I.   Procedural History**

On January 31, 2014, Plaintiff, pornographer MALIBU

---

[1] John Doe and the undersigned attorney are making a special, limited appearance only; this motion is not to be construed as a general appearance by either John Doe or the undersigned attorney. John Doe has not been subject to service of process in this action and does not intend to waive service of process.

MEDIA, LLC, filed the instant case, one of hundreds of similar cases[2] filed against anonymous Internet subscribers for alleged downloading of Malibu Media's pornography.

On April 4, 2014, Malibu Media moved the Court for leave to issue a third-party subpoena on the Internet Service Provider that services the account identified by IP address 66.176.59.75 to identify the person or entity ("John Doe") who subscribes to that Internet service account (Doc. 6).

On April 07, 2014, this Court found that "good cause" existed for the issuance of a subpoena and granted Malibu Media's motion (Doc. 8).

## II. Introduction

Similar to hundreds of other cases pornographer Malibu Media has filed across the country, Malibu Media's entire case against John Doe Internet service accountholder is based solely on the allegations of a single unlicensed "investigator"/expert, Mr. Tobias Fieser of IPP International UG, in Germany.  Mr. Fieser's (and thus Malibu Media's) allegations only identify an IP address, which identifies an Internet service account, not an individual.  Without Mr.

---

[2] Gabe Friedman, *The Biggest Filer of Copyright Lawsuits? This Erotica Web Site*, NEW YORKER (Mar. 15, 2014), available at http://www.newyorker.com/online/blogs/currency/2014/05/the-biggest-filer-of-copyright-lawsuits-is-this-erotica-web-site.html

Fieser's evidence pointing to this IP address, Malibu Media has not one shred of evidence to tie John Doe — the accountholder corresponding to that IP address — to any infringement whatsoever. Recognizing that Mr. Fieser's geolocation software makes up the entire factual basis of Malibu Media's complaint, and that said software cannot identify who, if anyone, actually infringed Malibu Media's copyright, two other judges in this Division have rejected Malibu Media's complaints against other "John Does."

Furthermore, even if Plaintiff's "investigator" did, *arguendo*, point to an actual individual, and not an entire Internet service account and everyone who may have accessed it, because Malibu Media's entire case (not to mention its other hundreds of cases nationwide) is based on data obtained by an unlicensed investigator who has been disclosed in other similar cases to have a contingent-fee relationship with Malibu Media, that data is unlawful, unreliable, and therefore inadmissible. Without this data and information, Malibu Media has no evidence at all against the instant John Doe — and no case. Because Defendant's privacy is at stake, not to mention the embarrassment of being associated with Plaintiff's pornography, the Court should not rely upon the tenuous allegations by an unlicensed investigator who has been

disclosed to hold a contingent-fee relationship to Malibu Media.

Therefore, this case should be dismissed, or Malibu Media should be required to show cause why the case should not be dismissed, while, meanwhile, the subpoena should be quashed, or a protective order entered to save John Doe the embarrassment and undue burden of having his/her private information released in conjunction with a case that is essentially, a house of cards, subject to imminent collapse.

III. **Recent Orders in this Judicial Division have dismissed identical cases because allegations pertaining to an IP address are not enough to identify the infringing individual**

On March 20, 2014, in a near-identical case, the Honorable Ursula Ungaro of the Miami Division entered an order dismissing Malibu Media's case. Case No. 1:14-cv-20213-UU [Doc. 10] (Copy at **Exhibit "1"**). In that case, Judge Ungaro had previously, *sua sponte*, issued a show-cause order[3] requiring Malibu Media to show good cause why the Court should reasonably rely on the use of geolocation or other technologies to establish the defendant's identity. Malibu Media responded, and, after considering said response, Judge Ungaro entered an order dismissing the case, explaining:

---

[3] Doc. 7 in 1:14-cv-20213-UU (March 5, 2014).

> Plaintiff has not shown how this geolocation software can establish the identity of the Defendant. There is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district. . . . Even if this IP address is located within a residence, the geolocation software cannot identify who has access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright.

Exh. "1."  Judge Ungaro also filed identical show-cause orders in at least two other Malibu Media cases, Case Nos. 0:14-cv-60681-UU [Doc. 5] and 0:14-cv-60682-UU [Doc. 5], both of which had been filed on March 18, 2014, after which Malibu Media filed notices of voluntary dismissal.  Both cases were closed on March 27, 2014.

Next, on April 4, 2014, in another *Malibu Media v. Doe* case, Case No. 14-20216-FAM, Chief Judge Federico A. Moreno entered another order to show cause (copy at **Exhibit "2"**), therein citing to Judge Ungaro's order, requiring Malibu Media to show cause why the court should rely on geolocation services to establish the Defendant's identity and location in this district.  This order was a deviation from at least one previous order by Judge Moreno in a similar case, where he

had, prior to the entry of Judge Ungaro's order, granted Malibu Media's motion for early discovery, such as one filed on January 31, 2014, in Case No. 1:14-cv-20218-FAM.

Judges Ungaro and Moreno are not alone in ruling that cases filed against IP subscribers fail to state a cause of action. In January, a district judge in Seattle entered an order of dismissal because "simply identifying the account holder associated with an IP address tells us very little about who actually downloaded *Elf-Man* using that IP address." *Elf-Man, LLC v. Cariveau*, 2014 WL 202096, No. C13-0507RSL (Jan. 17, 2014). One reason is that, with each Defendant identified only by an IP address, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous." *In Re: BitTorrent Adult Film Copyright Infringement Cases*, No. 11-cv-03995, 2012 WL 1570765, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012). Due to the increasing popularity of wireless routers, identifying a computer user by an IP address is unlikely, as different family members, visitors, or even neighbors could have performed the alleged downloads. *Id*. One court observed that as many as "30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared

copyrighted material." *Digital Sin, Inc. v. Does 1-176,* 2012 WL 263491 *3 (S.D.N.Y. Jan. 30, 2012).

**IV. Malibu Media's entire case is based on unlawfully obtained information which would likely be inadmissible**

Next, the Court should consider that all of Malibu Media's information used to base its claim against Defendant was obtained unlawfully. Malibu Media's entire factual basis against Defendant is derived solely from a report conducted by Plaintiff's "investigator," Mr. Fieser of IPP International UG, unlicensed entity improperly engaging in regulated activities. Because the outcome of Mr. Fieser's investigation is Malibu Media's entire case and therefore massively prejudicial to John Doe, this evidence is hugely important to consider early in the proceedings.

Malibu Media alleges: "Plaintiff's investigator, IPP International UG, established a direct TCP/IP connection with the Defendant's IP address" (Doc. 1 ¶ 18). "IPP International UG downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on [Plaintiff's] Exhibit A." (Doc. 1 ¶ 19). The individual behind IPP International UG is Tobias Fieser, who has stated that IPP International UG is "a company organized under the laws of Germany" (Doc. 6-4 at ¶ 1).

Because IPP and Mr. Fieser are unlicensed in Florida and have secured evidence for the purpose of using in the trial of a civil case, they are in violation of Florida's private investigator requirements as found in Chapter 493, Florida Statutes. Chapter 493 requires any person conducting investigative activities regulated thereunder to be properly licensed. Fla. Stat. § 493.6118(1)(g). Among other things, Florida defines "private investigation" to mean "the investigation by a person or persons for the purpose of obtaining information with reference to . . . The business of securing evidence to be used . . . in the trial of civil . . . cases and the preparation therefor." Fla. Stat. § 493.6101(17)(g). Furthermore, "[e]mploying or contracting with any unlicensed or improperly licensed person or agency to conduct activities regulated under . . . [Chapter 493], or performing any act that assists, aids, or abets a person or business entity in engaging in unlicensed activity, when the licensure status was known or could have been ascertained by reasonable inquiry," is a violation of Chapter 493 and grounds for discipline thereunder. Fla. Stat. § 493.6118(1)(n). Each individual licensed as a Private Investigator in Florida must "[b]e a citizen or permanent legal resident alien of the United States or have appropriate authorization issued by the

United States Citizenship and Immigration Services of the United States Department of Homeland Security." Fla. Stat. § 493.6106.

Because Mr. Fieser and IPP operate to secure evidence of copyright infringement to be used in the trial of this civil case and the preparation therefor, they must be licensed under the statute. *See supra* Fla. Stat. § 493.6101(17)(g). As such corporation and individuals are conducting private investigation without proper licensing in Florida, their investigation of John Doe is in violation of Florida Statute Section 493. Furthermore, as Malibu Media has hired this private investigator to investigate defendant on its behalf, it too is in violation of section 493.6118(1)(n), Florida Statutes, which makes the hiring of an unlicensed private investigator a violation of chapter 493.

### V. **Plaintiff should be required to disclose any contingent agreement between it and its witness**

Next, recent filings in other, near identical Malibu Media cases in other jurisdictions have raised further pertinent questions regarding the admissibility of Mr. Fieser's evidence; specifically, that Malibu Media has paid him on a contingent basis for his investigatory work in these cases. Like the instant case, these other Malibu Media cases

are also filed against anonymous John Doe Internet subscribers and all are based on the declarations and investigations of Tobias Fieser.

According to the declaration of Mr. Morgan Pietz, a reputable California-barred attorney who has represented numerous defendants in near-identical Malibu Media cases in other jurisdictions, Malibu Media has admitted in discovery that it retained Mr. Fieser on an oral contingency-fee agreement. A copy of a declaration by Pietz, detailing this information, is attached hereto as **Exhibit "3,"** and the exhibits to it attached as composite **Exhibits "4" through "9"** to this motion. Mr. Pietz's declaration details an interrogatory propounded on Malibu Media in *Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-6312, which asked Malibu to identify "all persons or business entities that have an interest, financially or otherwise, in this litigation. . .". In its answer, Malibu explained, "**Pursuant to an oral contingency fee agreement, IPP International UG is entitled to a small portion of the proceeds from the resolution of this case in consideration for the services it provided.**" (Exh. 3 at 4). Mr. Pietz also references another interrogatory answer which had inquired into Malibu's agreement with IPP, and Malibu responded that, "Plaintiff and IPP International have

*Malibu Media v. John Doe,* 1:14-cv-20393-CMA                John Doe's Omnibus Motion to Dismiss *et al.*, Page **10** of **16**

an oral agreement that was formed approximately 2.5 years ago. ***This agreement has not ever been modified or amended***. The terms of this agreement are confidential and constitute a trade secret." (Exh. 3 at 4, citing to Exhibit C, p. 5).

In light of this new information, it is clear that, at the very least, an inquiry should be made as to the status of Mr. Fieser's agreement with Malibu Media before this Court continues to rely on Mr. Fieser's information as the sole basis for Malibu Media's lawsuits and discovery motions.

If indeed Mr. Fieser, who, as said before, is the entire basis of Malibu Media's case, is a contingent-fee witness, his testimony is unreliable and inadmissible. First, contingent-fee witnesses are simply not legal. Pursuant to Rule 4-3.4(b), Rules Regulating The Florida Bar, a lawyer may not enter into a contingent fee agreement with an expert witness (but may pay an expert a reasonable *noncontingent* fee). *See also* 18 U.S.C. § 201(c)(2) (making it illegal to give or offer "anything of value to any person, for or because of the testimony under oath or to be given by such person as a witness" in any court proceeding).

Furthermore, because a contingent-fee witness is naturally biased, his testimony is inadmissible. *See, e.g.*, *Straughter v. Raymond*, 2011 WL 1789987, 2011 U.S. Dist. LEXIS

53195 at *9-10 (C.D. Cal. May 9, 2011) (collecting cases and holding that a contingent fee expert was *per se* excluded); *In re Mushroom Transp. Co. Inc.*, 70 B.R. 416, 418 (Bankr. E.D. Pa. 1987) (precluding an expert witness employed under a contingent fee agreement from testifying unless the method of compensation was altered); *Gediman v. Sears, Roebuck & Co.*, 484 F. Supp. 1244, 1248 (D. Mass. 1980) (stating it would have excluded expert appraisal testimony on valuation had it initially appeared that the witness had been compensated for his appraisal on a contingent fee basis). "An agreement to give an opinion on a contingent basis, particularly on an arithmetic scale, attacks the very core of expert testimony." *Id. Accord, Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 2000 WL 976800 at *3 n.3 (D. Md. 2000) ("Financial arrangements that provide incentives for the falsification and exaggeration of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of witnesses.").

Moreover, in a case like the instant one, where the investigator is tracking BitTorrent users who have downloaded files of movies from a BitTorrent stream, the interest becomes even more suspect where the inherent bias has a tendency to encourage false testimony but also — potentially — the

creation of a "honeypot," or the uploading by an initial seeder of certain BitTorrent files with the intention of entrapping unsuspecting users into committing potential violations by downloading copyrighted material.[4] Furthermore, the fact that Mr. Fieser is not licensed as a proper investigator, and therefore not regulated, as stated above, brings his testimony into further question.

## VI. All signs point to dismissal

If Mr. Fieser's testimony is unreliable and inadmissible, all references to and reliance on same should be stricken, pursuant to Rule 12(f) as being immaterial, impertinent, or scandalous.  As Malibu Media's entire case is based on this testimony, with these allegations removed, Malibu Media has not one shred of a factual allegation against John Doe — and therefore no case — which should cause dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Therefore, the granting of early discovery of allowing Malibu Media to obtain John Doe's identity from this

---

[4] *See, e.g., Copyright Troll Ran Pirate Bay Honeypot, Comcast Cable Confirms,* TORRENTFREAK Aug. 15, 2013, available at https://torrentfreak.com/copyright-troll-ran-pirate-bay-honeypot-comcast-confirms-130815/;
Joe Mullin, *Pirate Bay Suggests Prenda Did Create "Honeypot" for Downloaders*, ARSTECHNICA, June 7, 2013 http://arstechnica.com/tech-policy/2013/06/pirate-bay-data-suggests-prenda-did-create-honeypot-for-downloaders/

unlawfully obtained IP address, is certain to result in a blatant violation of John Doe's right to privacy and potentially result in Malibu Media encouraging John Doe to pay settlement fees, the receipt of which, considering the inadmissibility of Malibu Media's key evidence would be grossly unfair.

Furthermore, as dismissal is imminent, the outstanding subpoena seeking John Doe's information must be quashed. Should the case not be dismissed, considering the impropriety of Malibu Media's investigator and especially given the shameful nature of the pornography at issue, a protective order is proper to protect Defendant from the annoyance, embarrassment, oppression, and undue burden and which would forbid the disclosure of his/her private information to Malibu Media.

## VII. Conclusion

Malibu Media's case is a house of cards, and collapse is imminent. First, as an IP address is not a person, this Court should follow the trend set in this judicial division by the likes of Judges Ungaro and Moreno in similar or near-identical cases and dismiss the action. Second, as the IP address in question was obtained unlawfully by an unlicensed investigator and potentially pursuant to a contingent witness-fee

agreement, and, being that it is Malibu Media's *only* evidence against John Doe and the entire evidence on which the instant subpoena was allowed, the order granting early discovery should be overturned and the case dismissed, or, at the very least, Malibu Media should be ordered to show cause as to why all evidence and data from its Investigator/Expert, Mr. Tobias Fieser, and his company, IPP, should not be excluded and the case dismissed.

WHEREFORE, for the foregoing reasons, Defendant, "John Doe," respectfully requests that this Honorable Court enter an Order:

1. GRANTING this Motion;
2. DISMISSING the instant case, or, in the alternative, requiring Malibu Media to SHOW CAUSE why the case should not be dismissed;
3. QUASHING the outstanding subpoena seeking John Doe's identity, or, in the alternative, issuing a protective order protecting same;
4. VACATING this Court's Order granting Plaintiff leave to serve third-party subpoenas; and
5. Any other relief as is just and proper.

**RULE 7. 1(a)(3) CERTIFICATE OF GOOD-FAITH CONFERENCE**

I hereby certify that, on May 20, 2013, I conferred, telephonically, with counsel for Plaintiff, who stated that Plaintiff is opposed to the relief requested in this motion.

<u>/s/ Cynthia Conlin, Esq.</u>
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
cynthia@cynthiaconlin.com

**CERTIFICATE OF SERVICE**

I hereby certify that on **May 21, 2014**, I filed electronically the foregoing with the Clerk of the Court via CM/ECF system which will notify electronically all parties.

*Attorney for John Doe:*

**Cynthia Conlin, P.A.**
1643 Hillcrest Street
Orlando, Florida 32803-4809
Tel. 407-965-5519
Fax 407-545-4397
www.cynthiaconlin.com

<u>/s/ Cynthia Conlin, Esq.</u>
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
Cynthia@cynthiaconlin.com