UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 1:14-cv-20393-CMA |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE subscriber assigned IP address 66.176.59.75, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S OMNIBUS MOTION TO DISMISS ACTION WITH MOTION TO QUASH NON-PARTY SUBPOENAS OR ENTER PROTECTIVE ORDER WITH INCORPATED MEMORANDUM OF LAW**

i

I.   **INTRODUCTION**

Defendant John Doe's Omnibus Motion to Dismiss Action With Motion to Quash Non-Party Subpoenas or Enter Protective Order, With Incorporated Memorandum of Law (CM/ECF 9) ("the Motion") should be denied. Defendant has failed to articulate any reason under Fed. R. Civ. P. 45 to quash the subpoena. While Defendant correctly asserts that Malibu Media, LLC ("Malibu") paid IPP International UG ("IPP"), who is not licensed by the State of Florida as an investigator, for its data collection services, Defendant erroneously argues that the physical evidence obtained by IPP is inadmissible and therefore this Court should quash the subpoena, vacate its previous order, and dismiss the case. Neither paying a service provider to record computer data nor the failure of a service provider to have a license is a basis under the Federal Rules of Evidence to exclude relevant evidence or for any of the relief Defendant requests. Further, Defendant's reliance on Judge Ungaro's opinion fails to account that Plaintiff pled a plausible claim that Defendant is the infringer. Defendant does not dispute that venue is improper, nor provide an affidavit or any evidence that would support that theory. For all the foregoing reasons, as more fully explained below, Defendant's Motion should be denied.

II.   **FACTUAL BACKGROUND**

   A. <u>Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business</u>

Plaintiff, Malibu Media LLC, brings its lawsuit against Defendant in good faith in order to stop ongoing, long term, copyright infringement. Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch. *See* CM/ECF 6-1 at ¶3. Ms. Field was a real estate agent and Mr. Field was a photographer. *Id*. at ¶ 4. When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together. *Id*. at ¶ 5. The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*. at ¶ 6. The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. *Id*. Their goal was to create erotica that is artistic and beautiful. *Id*. at ¶ 7. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id*. at ¶ 8.

Their vision has come to fruition. Currently, X-Art.com has tens of thousands of

members, but the Fields are finding it hard to grow and maintain the memberships when so many people are finding their films for free. *Id.* at ¶ 15. They have worked hard and invested millions of dollars into their business in order to produce the best quality product. *Id.* at ¶ 14. For the first three years (when their site was not as popular) they did not have as many issues with piracy. *Id.* at ¶ 18. Now that their videos are highly desirable, more people steal their videos than pay for a subscription. *Id*. Malibu Media receives many complaints from its members asking why they should pay to subscribe when Malibu Media's movies are available for free through BitTorrent. *Id*. at ¶ 19. Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. *Id.* at ¶ 27. Despite sending thousands of DMCA notices per week, the infringement continues. *Id*. at ¶ 28. And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free. *Id*. Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts across the country seeking to deter and stop the infringement.

Defendant's criticism of Plaintiff's copyright protection efforts is unjustified. Courts have recognized the criticism such as Defendant's is unfounded. Indeed, "[m]any internet blogs commenting on [these types of cases] ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages." *Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013). Last June, Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial. *See Id*. In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings. Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of proof with substantial evidence and deserves a large award*." Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

1. <u>Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics</u>

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . . Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* (Emphasis in original).

2

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "[T]he Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

  2. The Infringer

Defendant has infringed seventeen (17) of Plaintiff's copyrighted works beginning on April 2, 2013 and continuing until December 30, 2013. *See* CM/ECF 1-2. Defendant's Internet has been used to illegally downloaded Plaintiff's movies over the course of several months. By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies. *See* Complaint, at ¶¶ 11 -20. In addition to Plaintiff's copyrighted content, Defendant infringed on over 4000 files of copyrighted content owned by other rightsholders.

  B. The Data Evidencing The Infringement Is *Not* Capable of Being Manipulated By Humans

Defendant's entire argument is premised on the possibility of witness bias based upon Malibu's payment for IPP's services. As explained below, the evidence that Malibu uses for purposes of proving infringement occurred is *recorded* in such way that it is *not* capable of being manipulated or altered. Humans play no part in the creation or storage of the evidence. Significantly, the evidence can be independently verified by anyone – including Defendant. Consequently, there is no possibility of biased testimony. Exhibit A explains why this paragraph is true.

  C. A Short Summary of Mr. Fieser's Possible Testimony

Mr. Fieser is the only employee of IPP who *may* testify. His testimony is unnecessary. Therefore, Malibu will *not* likely call Mr. Fieser. What follows is a short summary of what Mr. Fieser would say if Malibu calls him.

3

Tobias Fieser is a salaried employee of IPP. Fieser Declaration, at ¶ 4, Exhibit B. He does not have an ownership interest in IPP nor any other entity involved in or affiliated with IPP's data collection system. *Id.*, at ¶ 7. Mr. Fieser is not being paid for his testimony and does not have the right to receive any portion of a settlement or judgment in Plaintiff's favor.[1] *Id.,* at ¶ 8.

Mr. Fieser has three primary functions at IPP: (1) verify that the BitTorrent computer files as evidenced by their unique hash values are copies of the original works; (2) extract the MySQL server data and make it available to IPP's clients, here Malibu's counsel; and (3) upload a declaration prepared by IPP's clients' counsel (in this case Malibu's attorney) into a computer program and sign a declaration if a green light appears.[2] *See* Exhibit C, Mr. Fieser's testimony during the Bellwether Trial transcript at pp. 92, 100. The computer program verifies the attested to infringement data is contained in the servers' MySQL log files. This ensures it has not been altered by counsel during the suit formation process. *Id.*

1. <u>Mr. Fieser Does Not Need to Testify That the Computer Files Transmitted Via BitTorrent Are Copies Because Anyone Can Do That</u>

Mr. Fieser does not need to testify that the computer files transmitted via BitTorrent are copies of Malibu's movies. To explain, the computer files have *unique* cryptographic hash values and are playable movie files. Accordingly, anyone can watch the BitTorrent computer file copy and compare it to the original for purposes of ascertaining whether it is a copy.

2. <u>Mr. Fieser is Not the Witness Malibu Will Call to Authenticate the Infringement Data at Trial or to Lay the Foundation For its Introduction</u>

At trial, Malibu will call Mr. Patzer to testify that the PCAPs and MySQL log files contain evidence that proves that an infringement was committed by a person using Defendant's IP Address. Malibu will not use Mr. Fieser for this purpose because he will not be able to establish the chain of custody to the PCAP. To explain, Mr. Patzer, not Mr. Fieser, restores the PCAPs saved onto the WORM tape drives and makes forensically sound copies of them for use at trial. Thus, only Mr. Patzer can testify to the chain of custody.

---

[1] Malibu would reimburse IPP for Mr. Fieser's travel and lodging costs and pay IPP a reasonable flat daily rate fee for Mr. Fieser's time away from work.

[2] Each month approximately 80,000 U.S. citizens infringe Malibu's copyrighted works. Malibu's counsel culls through this infringement data received by IPP and sues 100-150 of the worst-of-the-worst infringers. To identify potential defendants, Malibu's counsel analyzes various things such as length of infringement, number of infringed works, and evidence of third party infringements the content of which can be used to identify a specific person. After using IPP's infringement data counsel sends it back as formatted declarations.

4

       D.      A Very Short Explanation of Michael Patzer's Anticipated Testimony

Michael Patzer works as an independent contractor predominantly for Excipio GmbH, a German company. Patzer, at ¶ 2, Exhibit D. Excipio contracts with IPP to provide IPP with the data collection system that IPP uses to detect infringement of Malibu's works.[3] *Id.*, at ¶ 4. Mr. Patzer designed, implemented, maintains and monitors the data collection system that Excipio both owns and uses to identify the IP addresses used by people to commit copyright infringement via the BitTorrent protocol. *Id.*, at ¶ 3. No one at Excipio has an ownership in IPP or vice versa. *Id.*, at ¶ 15. Mr. Patzer does not have an ownership interest in Excipio. *Id.*, at ¶ 16. He is not paid for his testimony and is not entitled to any portion of any money received from a settlement or judgment in Malibu's favor.[4] *Id.*, at ¶ 18. Malibu has never paid Excipio or Mr. Patzer anything. *Id.*, at ¶ 19.

Mr. Patzer will answer all of the questions necessary to lay the foundation for the introduction into evidence of the PCAP and MySQL log files as business records within the meaning of Fed. R. Evid. 803(6). Further, he will answer all of the questions necessary to authenticate the PCAP and MySQL log files pursuant to Fed. R. Evid. 901(a). Finally, Mr. Patzer will testify that the PCAPs are recordings of computer transactions during which a person using IP Address 66.176.59.75 sent pieces of the infringing computer files to the servers that he personally maintains and monitors. In this case, Mr. Patzer independently verified that the infringement occurred at the time and dates listed on Exhibit A to the Complaint. *Id*. at ¶ 13.

       E.      Patrick Page Tested the Data Collection System

Malibu's computer forensic expert, Patrick Paige, tested the data collection system. His report is attached as Exhibit F. His test involved seeding public domain movies, i.e. movies that are not protected by copyright. *See* Exhibit F. He gave IPP the titles of the works. *Id.* IPP, using Excipio's system, found the works and entered into BitTorrent transactions with Mr. Paige's test servers. *Id.* Mr. Paige used a packet analyzer on his test servers to record all of the transactions in PCAPs. *Id.* He compared the PCAPs he recorded during the transactions with

---

[3] IPP used to maintain and operate and use its own system. At some time unknown to Malibu, but well in advance of any of the infringement that was logged in this case, IPP entered into a license agreement with Excipio to use its system. The two companies now both compete with each other and are licensor-licensee. Under this arrangement, IPP licenses the use of Excipio's system and servers. Patzer, at ¶ 3. IPP adds value and distinguishes itself by, *inter alia*, customer specific analysis tools and its client service.

[4] Malibu does intend to reimburse Excipio for Mr. Patzer's travel and lodging cost and pay a reasonable flat daily rate fee for Mr. Patzer's time away from work.

the PCAPs that were recorded by IPP using Excipio's system.  *Id*.  They matched perfectly.  *Id*.  This could not happen unless Excipio's system accurately created PCAPs of transactions.  *Id*.

      F.      <u>Judge Baylson Found the Data Collection System Was Valid</u>

Judge Baylson presided over the Bellwether trial wherein Malibu was the first ever Plaintiff to try a BitTorrent copyright infringement case.  At the trial, Judge Baylson had an independent court appointed computer expert in attendance.  After the trial, Judge Baylson found that IPP's data collection system "is valid."  *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("Malibu [] expended considerable effort and expense to determine the IP addresses of the infringing parties, and the technology employed by its consultants . . . was valid.")

      G.      <u>Defendant Can Retain An Expert to Test the Data Collection System</u>

Defendant has the right to hire an expert to test the data collection system.  Defendant has chosen instead to attack the data collection system based upon unfounded speculation about the potential for biased testimony in the hopes that Plaintiff will never know Defendant's identity and he will never be held liable for his infringement.  Defendant's attack does not specify how the system may be flawed or how testimony that merely reads computer records can be biased.  This is no surprise because there is no possibility for biased testimony.

      H.      <u>Malibu and IPP Have a Written Fixed Fee Agreement</u>

Malibu and IPP have a written fixed fee agreement pursuant to which Malibu pays IPP for providing the service of collecting data about infringements.  Field, at ¶ 8, Exhibit G.  IPP has not been paid anything for this case.  Fieser, at ¶ 10.  Malibu's prior oral agreement with IPP to pay IPP a small portion of the amount received from a settlement or judgment from Malibu's litigation does not apply to this case.  Field, at ¶ 7.  Malibu has never paid *any* fact witness to testify in this case or any other case.  *Id.*, at ¶ 9.[5]

**III.**    <u>**ARGUMENT**</u>

      A.      <u>This Court Should Not Quash the Subpoena or Vacate Its Prior Order</u>

Fed. R. Civ. P. 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden.  *See Fed. R. Civ. P. 45(c)(3)(A)(i-iv)*.  The Rule also provides for circumstances in

---

[5] Malibu pays Mr. Paige, an expert, an hourly rate to prepare for and appear at legal proceedings.

which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty to incur substantial expense to travel more than 100 miles to attend a trial. *See Fed. R. Civ. P. 45(c)(3)(B)(i-iii)*. "No other grounds are listed." *Malibu Media, LLC v. John Does 5-8*, 2013 WL 1164867 at *2 (D. Colo. 2013) (denying motion to quash in similar BitTorrent copyright infringement action where defendant's motion failed to articulate a reason to quash the subpoena that complied with Rule 45). "The party seeking to quash or modify a subpoena bears the burden of demonstrating that the information sought in the subpoena subjects a person to undue burden or requires the disclosure of privileged information." *Malibu Media, LLC v. John Does 1-21, et. al.*, 1:12-cv-09656, [CM/ECF 46] at p. 2 (N.D. Ill. June 6, 2013). Here, Defendant has not identified any reason as to how the subpoena subjects him to undue burden or discloses privileged information, nor has he articulated any reason under Fed. R. Civ. P. 45 as to why this Court should quash the subpoena.

          1. <u>Plaintiff Has No Other Way to Protect Its Copyright</u>

In granting Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference this Court found that "Plaintiff established that 'good cause' exists for it to serve a third party subpoena on Comcast Cable." *See* CM/ECF 9. The Court should not vacate its prior correct Order because without the subpoena response, there is "no other method for a copyright holder to begin to protect its copyright when the BitTorrent protocol is the alleged method of infringement." *Malibu Media, LLC v. John Does 1-7*, 1:12-cv-01189-MMM-JAG [CM/ECF 13] (C.D. Ill. Feb. 11, 2013).

"At this stage of the proceedings, [Plaintiff] is merely seeking to identify who the defendants are based on their IP addresses." *MGCIP v. Does 1-316*, 2011 WL 2292958 (N.D. Ill. 2011). Plaintiff has no alternate means to identify those individuals who are using the BitTorrent protocol to infringe Plaintiff's copyrighted works. "Because of the very nature of internet infringement, it is often the case that a plaintiff cannot identify an infringer in any way other than by IP number. Given the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy." *Malibu Media LLC v. John Does 1-12*, 2012 WL 5928528 (C.D. Ill. 2012).

7

If Defendant believes Malibu's detection system is flawed, or that its investigator is biased, Defendant may later use this information to defend himself. Defendant's speculative arguments, however, should not prevent Plaintiff from moving forward with its case.

### 2. Plaintiff Pled a Plausible Claim that Defendant is the Infringer and this Court Must Take it As True

This Court must accept Plaintiff's allegations that Defendant, as the subscriber of the IP address 66.176.59.75, is the infringer. "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. ... Where the evidence conflicts, however, the district court must construe all reasonable inferences in favor of the plaintiff." *Van Vechten v. Elenson*, 920 F. Supp. 2d 1284, 1288-89 (S.D. Fla. 2013). "A claim is facially plausible when the court can draw 'the reasonable inference that the defendant is liable for the misconduct alleged' from the pled facts." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012). "Factual allegations [are] enough to raise the right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Piscatelli v. Nationstar Mortgage, LLC*, 13-80692-CIV, 2013 WL 7137480 (S.D. Fla. Dec. 3, 2013).

Plaintiff's claim that Defendant, the subscriber of the IP address used to infringe Plaintiff's movies, is the infringer is plausible. This is because Defendant is the most likely person to have committed the infringement. Indeed, by paying for the Internet, Defendant is the most likely person to use it, particularly at such a consistent and reoccurring basis at the dates and times alleged in the Complaint. "Plaintiff's allegation that its investigator connected to a computer associated with Defendant's internet account and was able to download bits of Plaintiff's copyrighted movies from it <u>supports a plausible claim</u> that Defendant infringed on Plaintiff's copyrighted works by copying and distributing portions of its movies." *Malibu Media LLC v. Gilvin*, 3:13-CV-72 JV, 2014 WL 1260110 (N.D. Ind. Mar. 26, 2014) (emphasis added).

Every court in the country to rule on this issue, including within the Eleventh Circuit, has found that Plaintiff has adequately stated a plausible claim for relief when alleging that the subscriber is the infringer. *See e.g. Malibu Media, LLC v. Pelizzo*, 12-22768-CIV, 2012 WL 6680387 (S.D. Fla. Dec. 21, 2012) ("taking the allegations in the light most favorable to Plaintiff, the Complaint adequately states a claim of copyright infringement."). And, Plaintiff's Complaint has also survived a motion for summary judgment in the Southern District of Florida. *See Malibu Media, LLC v. Fitzpatrick*, 1:12-CV-22767, 2013 WL 5674711 (S.D. Fla. Oct. 17, 2013). "Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (quoting *Twombly*, 550 U.S. at

8

570, 127 S.Ct. at 1974). Here, Plaintiff's well pled plausible allegation that Defendant is the infringer must be taken as true. And, when taken as true, geolocation technology accurately traces Defendant to a location in this District.

       3.   <u>The Cases Cited by Defendant Failed to Take Plaintiff's Well Pled Facts as True</u>

Defendant relies on Judge Ungaro's previous ruling, which held "Plaintiff has not shown how this geolocation software can establish the identity of the Defendant. There is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district." *See Malibu Media v. John Doe*, 1:14-cv-20213-UU (S.D. Fla. March 20, 2014) ("Malibu Media Ruling"). "Even if this IP address is located within a residence, the geolocation software cannot identify who has access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright. The Court finds that Plaintiff has not established good cause for the Court to reasonably rely on Plaintiff's usage of geolocation to establish the identity of the Defendant." *Id*.

Respectfully, Plaintiff suggests that Judge Ungaro erred because geolocation technology is not being used to identify the Defendant. Comcast's business records will identify the Defendant. Further, the statement "[t]here is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district" is simply not true. Plaintiff pled that the person actually downloading and viewing Plaintiff's movies is the subscriber and owner of the IP address. As set forth above, this allegation is not only plausible it is true the vast majority of these cases. Indeed, Plaintiff proved it to be true in the Bellwether trial and has had numerous subscribers admit to committing the infringement, some of whom have even filed public allocutions.

This Court's prior order correctly found that Plaintiff had established "good cause" for expedited discovery to determine Defendant's identity and reflected the overwhelming view that Plaintiff is entitled to move forward with its case. *See* CM/ECF 8 ("Plaintiff has established that "good cause" exists to serve a third party subpoena on Comcast Cable") This represents the view of every other court in this Circuit and throughout the country in Plaintiff's cases.

   *a. Federal Law Enforcement Rely on the Same Technology*

Federal Law Enforcement rely on geolocation technology to identify perpetrators of online crimes. *See United States v. Cray*, 450 F. App'x 923, 932 (11th Cir. 2012) *cert. denied*, 133 S. Ct. 265, 184 L. Ed. 2d 45 (U.S. 2012) (holding that allowing testimony on IP address geolocation databases into evidence was not an error). Indeed, in some cases Federal Law Enforcement is cited as using Maxmind, the exact same database used by Plaintiff. *See United States v. Tillotson*, 2:08-

9

CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) (noting that Maxmind's database correctly identified the Defendant and is sufficient to establish probable cause); *United States v. Richardson*, 4:11CR3116, 2012 WL 10382 (D. Neb. Jan. 3, 2012) (used by Homeland Security to identify the defendant).

Judge Ungaro's previous Malibu Media Ruling not only disallows any copyright holder from enforcing its rights against infringement on the Internet, but it also prevents the adjudication of any cause of action arising from illegal activity on the Internet where a defendant can only be identified by an IP address. Numerous types of cases rely on the exact same technology as Plaintiff to determine the guilty defendant. By refusing to allow for a plaintiff to establish venue against a defendant known only by an IP address, when the defendant's ISP can clearly identify him, a dangerous precedent is being set that is not warranted by any existing law.

    b. *Other Court's Have Disagreed with Judge Ungaro's Ruling*

Toward that end, other courts have specifically disagreed with Judge Ungaro's Malibu Media Ruling. Just last month, the Eastern District of Pennsylvania, when considering a similar motion to quash which relied on Judge Ungaro's opinion, found "[t]he arguments that John Doe raises concerning the link between the actual infringer and the IP address or MAC address do not undermine the plausibility of Malibu Media's claim or defeat that claim as a matter of law -- rather, John Doe raises factual issues about identity more properly dealt with during discovery." *Malibu Media v. John Doe*, 2:14-cv-01280-SD (E. D. Pa. May 19, 2014) (attached as Exhibit I). The Court then found that Malibu Media had made a *prima facie* showing of venue by using geolocation technology. "[A] defendant 'may be found' wherever he is amenable to personal jurisdiction,' and Malibu Media has made a prima facie showing of personal jurisdiction by alleging its geolocation software places the defendant within this district." *Id*. (internal citations omitted).

    c. *Every Other Court in the Country Has Found Geolocation Software Presents a Prima Facie Showing of Venue in BitTorrent Litigation*

The Eastern District of Pennsylvania's ruling is consistent with your Honor's opinion in this case granting Plaintiff early discovery to learn the identity of the John Doe Defendant. *See* CM/ECF 6. Every court throughout the country to rule on this issue has found geolocation software appropriately locates the defendant to create a prima facie allegation of venue. *See e.g. Malibu Media, LLC v. John Does 1-25*, 2:12-CV-266-FTM-29, 2012 WL 3940142 (M.D. Fla. Aug. 21, 2012) (Plaintiff sufficiently alleged personal jurisdiction by using geolocation software to trace defendants to a location in the Middle District of Florida); *see also Malibu Media v. John Doe*, 3:13-cv-01582 (M.D. Fla. April 10, 2014) ("In this seemingly next generation of Bit-Torrent litigation,

10

Malibu Media has sought to allay those misgivings. It has not joined defendants. It has traced the IP addresses to places in the Jacksonville Division. Its allegations, based on experience and practical realities, make plausible that the subscribers are the infringers.")

"In situations where a plaintiff files suit against then unnamed defendants, courts have accepted IP addresses as establishing a prima facie case of personal jurisdiction." *Canal St. Films v. Does 1-22*, 1:13-CV-0999, 2013 WL 1775063 (M.D. Pa. Apr. 25, 2013); *see also W. Coast Prods., Inc. v. Does, 1-1911*, CV 11-1687(ABJ), 2011 WL 11049265 (D.D.C. Oct. 25, 2011) ("plaintiff could demonstrate a good faith basis for its venue allegations if a geolocation service placed the IP address in question within the District of Columbia, or within a city located within 30 miles of the District of Columbia"); *Digital Sins, Inc. v. John Does 1-245*, 11 CIV. 8170 CM, 2012 WL 1744838 (S.D.N.Y. May 15, 2012) (geolocation is sufficient to allege personal jurisdiction and venue); *Digital Sin, Inc. v. Does 1-27*, 12 CIV. 3873 JMF, 2012 WL 2036035 (S.D.N.Y. June 6, 2012) (same); *John Wiley & Sons, Inc. v. Does Nos. 1-27*, 11 CIV. 7627 WHP, 2012 WL 364048 (S.D.N.Y. Feb. 3, 2012) (same); *Malibu Media, LLC v. John Does 1-15*, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012) (geolocation establishes *prima facie* case of personal jurisdiction); *Malibu Media, LLC v. John Does 1 through 11*, 2012 WL 2921227 (S.D. Cal. July 17, 2012) (finding use of geolocation proper for the court to establish personal jurisdiction and venue over the defendant).

This is also consistent with the recent D.C. Circuit Court of Appeals decision, released just two weeks ago, which found that a plaintiff must use geolocation services to establish venue in a copyright bittorrent lawsuit. *See AF Holdings, LLC v. Does 1-1058*, 12-7135, 2014 WL 2178839 (D.C. Cir. May 27, 2014). And, in light of this opinion, courts have continued to find that Malibu Media establishes good cause to proceed against an anonymous Defendant, like your Honor did in this action. "[T]he Plaintiff has established a good faith basis for believing the putative defendant may be a District of Columbia resident. In Plaintiff's Complaint, Plaintiff alleges that it used 'proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ... traced to a physical address located within this District.'" *Malibu Media, LLC v. Doe*, CV 14-129 (CKK), 2014 WL 2206397 (D.D.C. May 28, 2014).

    d.  *Defendant Has Not Challenged Personal Jurisdiction or Venue*

Defendant relies on Judge Ungaro's opinion which dismissed Plaintiff's claim for failure to establish personal jurisdiction or venue, but here Defendant does not provide any evidence or affidavits to the Court that he does not reside in this District. "A civil suit to enforce the Copyright Act may be brought in any district 'in which the defendant or his agent resides or may be found.'"

11

*Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004) (citing 28 U.S.C. §1400(a)). "A defendant 'may be found' in a district in which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant." *Id.* "When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure requires that both assertion of jurisdiction and service of process be determined by state amenability standards, or the state long-arm statute." *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir. 1990). "One of the events subjecting a party to jurisdiction under Florida long-arm statute is '[c]ommitting a tortious act within this state." *Response Reward Sys., L.C. v. Meijer, Inc.,* 189 F. Supp. 2d 1332, 1337 (M.D. Fla. 2002).

"When a complaint is dismissed on the basis of improper venue without an evidentiary hearing, 'the plaintiff must present only a prima facie showing of venue....' Further, '[t]he facts as alleged in the complaint are taken as true to the extent they are uncontroverted by defendants' affidavits.' When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (internal citations omitted). "Essentially, the prima-facie standard, the determination of which may be made on the pleadings, boils down to one of 'plausibility'; to withstand a motion to transfer on the basis of plaintiff's venue of choice being improper, <u>the plaintiff must show only that the venue chosen is plausibly proper.</u>" *Goodwyn, Mills & Cawood, Inc. v. Black Swamp, Inc.*, 956 F. Supp. 2d 1323, 1327 (M.D. Ala. 2012) (emphasis added).

> 1. *Plaintiff Has Established A Prima Facie Showing That Venue Is Proper*

At this stage Plaintiff does not need to prove that Defendant is the infringer, nor defeat any speculative defenses Defendant may raise to foreclose on the possibility that someone else may have committed the infringement. It is plausible, indeed highly likely, that Defendant as the subscriber of the IP address in question, infringed Plaintiff's movies. For the Court to find that venue is not plausibly proper because someone else could have used Defendant's IP address to commit the infringement, when Plaintiff pled that the subscriber is the infringer, and geolocation technology has always traced to this District, is reversible error. Particularly given that Defendant has not even denied committing the infringement. It is clear error because all Plaintiff needs to show to establish venue is that the Defendant resides or may be found in this District. *See* 28 U.S.C. §1400. Defendant is the subscriber of the IP address infringing Plaintiff's movies, not a speculative third

party person. This is the case regardless of any defenses Defendant may assert. Until Defendant is dismissed, the Court has proper venue because he resides or may be found in this District.

      B.    <u>Malibu is Permitted to Pay For Data Collection Services</u>

Malibu has not paid nor offered to pay any individual for testimony. The fee Malibu pays IPP is for data collection services. Paying IPP for data collection services is neither unethical nor prohibited by law. "[T]his Court is unaware of any authority that interprets Rule 4-3.4(b) as barring counsel from compensating someone for their efforts in collecting evidence." *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao Ltda*, 2010 WL 625356 (S.D. Fla. 2010). "[P]arties are free to pay individuals, including fact witnesses, for providing information and assisting with litigation, so long as the payment is not for their testimony." *Armenian Assembly of Am., Inc. v. Cafesjian*, 924 F. Supp. 2d 183, 194 (D.D.C. 2013). "Anyone has a right, when threatened with litigation, or desiring himself to sue, to employ assistance with a view of ascertaining facts as they exist, and to hunt up and procure the presence of witnesses who know of facts and will testify to them." *Hare v. McGue*, 178 Cal. 740, 742, 174 P. 663, 664 (1918). At significant expense, IPP provides Malibu with labor and a data collection service. Malibu Media is permitted to pay IPP for its service.

      C.    <u>The Northern District of Illinois and the Southern District of Indiana Recently Denied Motions Nearly Identical to Movant's Motion in Malibu Media Cases</u>

In order to assert his claim that Plaintiff pays IPP on a contingency, Defendant relies on a declaration by a California attorney who has never taken discovery on this issue and has no personal knowledge. Indeed, not only does Defendant not have any personal knowledge, but he relies on an affidavit from someone with no personal knowledge who is merely speculating based on discovery responses that were posted on the Internet. Two courts have recently addressed the exact same issue raised by Defendant and found that Malibu Media's agreement with IPP is proper. "The Court is not convinced that the fact that Malibu Media pays IPP for its services would have changed the decision to grant the subpoena. Thus, Malibu Media's failure to apprise the Court of this fact does not warrant quashing the subpoena." *Malibu Media, LLC v. Doe*, 13 C 8484, 2014 WL 1228383 (N.D. Ill. Mar. 24, 2014).

> Doe's other three arguments relate to what Doe considers to be illegality and obfuscation surrounding Malibu Media's investigative methods. Doe maintains that because of these problems, the Court should not have considered Fieser's declaration. In response to Doe's motion, Malibu Media provides declarations that IPP is paid only for data collection services, that IPP has not been compensated

13

> for any work related to this specific case, and that Malibu Media has never paid nor offered to pay Fieser anything for his testimony. But even if Fieser or IPP were compensated on a contingency basis or otherwise for testimony, in violation of the rules of professional conduct applicable in this Court or 18 U.S.C. § 201(c)(2), which prohibits paying fact witnesses for their testimony, this does not make evidence obtained in violation of those rules inadmissible but rather only goes to the weight to be accorded to it.

*Id.* Additionally, the Honorable Judge Dinsmore of the Southern District of Indiana, who does have firsthand knowledge of the issue because he is the presiding judge over the case where the discovery in question was conducted, denied a Motion for an Order to Show Cause as to why Plaintiff Malibu Media, LLC should not be sanctioned pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority. In doing so, Judge Dinsmore found that Plaintiff did not engage in improper conduct when it paid IPP for its data collection services. *See Malibu Media, LLC v. Kelley Tashiro*, 1:13--cv--00205--WTL--MJD (S.D. In., Sept. 25, 2013).

"Defendant has not offered any evidence that Plaintiff is paying IPP for anything but data collection services used to gather information on Defendant to demonstrate infringement." *Id*. "Based upon this response to an interrogatory, Defendant has made the inference that the contingent fee arrangement is for the testimony IPP will give and not for any other purpose. The Court is not convinced that such an inference is justified. As Plaintiff explained in its response brief, *the fee paid to IPP is for the collection of data and not for IPP to testify as a witness.*" *Id*. at *2 (emphasis added).

D.   No Witness Has Ever Been Paid For Testimony Much Less on a Contingent Basis

Defendant erroneously conflates Malibu's proper payment to IPP for its data collection services with the false allegation that Malibu paid Tobias Fieser for testimony. Mr. Fieser is a salaried non-equity owning employee of IPP. Fieser, at ¶¶ 4, 7. Malibu has never paid nor offered to pay Mr. Fieser anything. *Id.*, at ¶ 11. When, as here, "[i]t is clear that the [individual] himself, as a witness, is not eligible to receive compensation for his testimony . . . [the] case does not even involve the payment of a fee to a witness." *People v. McNeill*, 316 Ill. App. 3d 304, 306, 736 N.E.2d 703, 705 (Ill. App. Ct. 2000). In *McNeil,* the witness's employer's compensation was contingent on the outcome of the case. Like here, however, the witness was not paid for his testimony. The *McNeil* Court refused to exclude the witness and opined that the

14

defendant could always attempt to impeach the witness's credibility on the basis that his employer had a contingent interest in the case.

  E. <u>Even if Malibu Had Paid a Witness on a Contingency That Witness's Testimony Should Not be Excluded</u>

"The *per se* exclusion of whole categories of evidence is disfavored by the Federal Rules of Evidence. It is a fundamental tenet of those rules that, with few exceptions, 'all relevant evidence is admissible,' Fed. R. Evid. 402, and 'every person is competent to be a witness,' Fed. R. Evid. 601." *U.S. v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (refusing to prevent the federal government's confidential informant from testifying even though the federal government had offered the confidential informant *contingent* compensation for his testimony.) "Merely because [Witness] was a paid informer does not render his testimony inadmissible." *United States v. Valle-Ferrer*, 739 F.2d 545, 547 (11th Cir. 1984); *see also United States v. Wilson*, 904 F.2d 656, 659 (11th Cir. 1990) (allowing testimony when witnesses were paid on a contingency). Notably absent from Fed. R. Evid. 402 and 601 is that a witness be disinterested or uncompensated in order to be permitted to testify.

  F. <u>Malibu Media Does Not Seed Its Videos</u>

Defendant frivolously and likely in violation of Rule 11 alleges based upon sheer false speculation, that Plaintiff's investigator, IPP, engages in what is referred to as a "Honeypot." Simply put, this is when a copyright owner seeds (uploads) copies of their own works on BitTorrent in order to create potential claims upon which to sue. Malibu Media is absolutely certain that no party or entity associated with it is uploading their Works to BitTorrent. That Malibu Media would upload those thousands of pirated versions of their Works on BitTorrent while simultaneously incurring the time and expense to employ individuals whose sole responsibility is to issue take down notices requesting over 360,000 infringing URLs be removed via DMCA takedown notices is nonsensical. More importantly, Malibu Media's main source of revenue is from the subscribers of its website, not from lawsuits. Intentionally seeding its movies would only cause Malibu to incur more damage to its business and would hurt itself.

  G. <u>IPP Is Not Subject to the Florida Private Investigator Act</u>

 IPP is not subject to the licensing requirements of Florida Statutes Chapter 493. "Florida's strong presumption against extraterritorial application of its law prohibits its application in this case. Florida courts have consistently declined to apply Florida law outside territorial boundaries unless a statute contains an 'express intention that its provisions are to be

15

given extraterritorial effect.'" *Boehner v. McDermott*, 332 F. Supp. 2d 149, 155 (D.D.C. 2004) aff'd, 441 F.3d 1010 (D.C. Cir. 2006) and *aff'd*, 484 F.3d 573 (D.C. Cir. 2007) (*citing Burns v. Rozen,* 201 So.2d 629, 630 (Fla. 1st DCA 1967); and *Southeastern Fisheries Ass'n, Inc. v. Dep't of Natural Res.,* 453 So.2d 1351, 1355 (Fla.1984)). IPP is a company organized and existing under the laws of Germany. It is not a Florida entity. It does not operate in Florida. It has no employees or agents in Florida. It conducts no business in Florida. . It pays no taxes in Florida. Defendant failed to submit a valid argument or any authority in support of the applicability of the Florida statute to this case.

Here, Defendant sent pieces of Malibu's copyrighted movies to Germany where the infringement was recorded. Defendant's IP address was not geolocated to a place within this district until *after* the infringement occurred. Accordingly, at the time the infringement occurred and was logged there was no way of knowing where Defendant resided. And, Plaintiff's investigator's software only received information that was already publicly available to the thousands of users on the BitTorrent system. Indeed, a computer utilizing Defendant's IP address willfully connected to the investigator's server and offered the information. Individuals who use the internet to illegally copy and distribute copyrighted material have a minimal expectation of privacy "because those individuals have already voluntarily given up certain information by engaging in that behavior." *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067 at *8 (E.D. Pa. 2012). *See also In re Verizon Internet Servs., Inc.*, 257 F.Supp.2d 244, 267 (D.D.C.2003) (sharing files on a peer-to-peer program is "essentially opening up the computer to the world"). In this case, Defendant connected to Plaintiff's server and directly transmitted to Plaintiff a piece of Plaintiff's movie. Plaintiff's investigator simply recorded that voluntary transmission.

Defendant's exact argument was asserted by the defendant in *Capitol Records Inc. v. Thomas-Rasset*, 79 Fed. R. Evid. Serv. 1203 (D. Minn. 2009), a well-known copyright infringement case involving peer-to-peer file sharing and similar investigation methods used by the plaintiff. Although not binding, the Court held that the Minnesota Private Detectives Act had no application because the plaintiff's investigator was located outside of the state, had no employees within the state, conducted no activities within the state, paid no taxes within the state, and had no agent within the state.

> The Court concludes that MediaSentry is not subject to the MPDA. Based on the language of the MPDA, the Act does not apply to persons or companies operating outside of the state of Minnesota . . . Additionally, there is a general presumption that Minnesota statutes do not apply extraterritorially . . . <u>Merely monitoring incoming internet traffic sent from a computer in another state is insufficient to constitute engaging in the business of private detective</u> within the state of Minnesota.

*Id. See also Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 257 (D. Me. 2008) (peer-to-peer file sharing case denying argument that because plaintiff's investigator was not licensed in Maine, the court should not have relied on the information it gathered in issuing expedited discovery order.)

Further, the determination of what constitutes a violation of Fla. Stat. 493.61118(1)(g) is left to the Department of Agriculture and Consumer Services. *See* Fla. Stat. 493.6121(1) ("The department shall have the power to enforce the provisions of this chapter . . . and . . . to cause to be investigated any suspected violation thereof or to cause to be investigated the business and business methods of any licensed or unlicensed person . . . under this chapter.") Federal courts have little interest in ascertaining whether a Florida state licensing statute has been violated. Regardless, under the laws of the State of Florida, courts do not have jurisdiction or authority to ascertain whether a licensing statute has been violated. *See also e.g. Malibu Media, LLC v. John Doe*, 1:13-cv-08484, CM/ECF 25, at p. 5 (N.D. Ill. March 24, 2014) (rejecting an identical argument under Illinois law stating, "Doe is asking the Court to determine what constitutes the unlicensed practice of private investigation, but that is a determination left to the Illinois Department of Financial and Professional Regulation.")

H. <u>Florida State Licenses Are Not a Prerequisite to Being a Witness</u>

Federal courts across the country universally agree that state licenses are not a prerequisite for a witness to give testimony. *See St. Cyr v. Flying J Inc.*, 2007 WL 2406999, at *5 (M.D. Fla. 2007) ("this Court will not prohibit Flying J from eliciting expert testimony from LaDon Richardson based on the single fact that he does not hold a Florida license under Florida Statute § 493.6100 *et seq*."); *Principi v. Survivair, Inc.*, 2005 WL 5961991, at *2 (M.D. Fla. 2005) ("whether Dr. Hollis is a licensed engineer in the State of Florida . . . has no bearing on the admissibility of his testimony."); *Malbrough v. State Farm Fire & Cas. Co.*, 1996 WL 565819, at *2 (E.D. La. 1996) ("a license is not a prerequisite to expert testimony under the Federal

17

Rules."); *Dillon Cos., Inc. v. Hussmann Corp.*, 163 Fed.Appx. 749, 756 (10th Cir. 2006) ("there is no authority that an expert . . . . is not qualified to testify because he was not licensed in the state where the trial occurred."); *McRunnel v. Batco Mfg.*, 917 F. Supp. 2d 946, 952 (D. Minn. 2013) ("The Court holds that licensing in the jurisdiction of the lawsuit is not a prerequisite for admissibility under Rule 702."); *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 112 (D.D.C. 2004) ("Courts frequently admit the testimony of experts even if the expert is not licensed to practice in the jurisdiction in which the court sits.")  As such, Plaintiff's investigator's testimony is admissible and proper.

I. Dismissal Is Unwarranted and Improper

Defendant cannot cite to one case that would justify striking Plaintiff's expert report under Rule 12(f) and then dismissing the cause under Rule 12(b).  Indeed, Defendant's argument is nonsensical.  Even if the Court were to strike, which as set forth above it should not, Plaintiff still has the infringement documented in PCAPs and a plausible basis to allege that Defendant is the infringer.  Therefore, under 12(b)(6) dismissal is not warranted.

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated:  June 10, 2014

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*

M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*